Curtin *v.* Marson et al., Appellants.

Argued October 1, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*A. Alfred Delduco,* for appellants.

*George J. Brutscher,* for appellees.

OPINION BY GUNTHER, J., January 21, 1958:

This appeal is from the refusal to enter a judgment non obstante veredicto and the refusal of a motion for a new trial in an action brought to recover real estate commission.

On or about February 7, 1954, Louis M. Marson, one of the appellants, authorized John D. Curtin to obtain a purchaser for the sale of his mushroom growing property in Chester County at the price of $25,-000.00. John D. Curtin was associated with F. Walter Grace in a partnership duly licensed and registered as real estate brokers. The next day, Curtin obtained an offer of $21,000.00 from a Mr. Lovisa which offer was submitted to appellants and refused. At this time Curtin was told by Marson that he would accept $22,-500.00 clear or net to him. Thereafter, on February 11, 1954, Curtin brought Alfred Sciotti and Peter Di-

Angelo to inspect the property. They went through the mushroom houses and DiAngelo and Sciotti asked many questions about the water supply, heating plant, ventilation of the houses, sizes of the beds, the amount of top soil available and the acreage and boundaries of the property. Later that day, Curtin told DiAngelo and Sciotti that Marson was asking $25,000.00 for the property and that he had an offer of $21,000.00. He stated to them that he thought the Marsons would take $23,000.00 or $23,500.00 for the property. DiAngelo and Sciotti stated they would like a few days to think it over. However, no offer was made for the purchase of the property through Curtin and he did not at any time communicate an offer to Marsons from DiAngelo and Sciotti.

On February 13, 1954, DiAngelo commissioned one Ralph Walter, who conducted a real estate brokerage business under the name of Kenneth Realty Co., Inc., to buy appellants' property. Earlier the same day Marson told Curtin that he had a telephone call from Walter who threatened him with a lawsuit if he, Marson, would sell the property to DiAngelo and Sciotti by reason of the fact that Marson had listed this property with him for sale in 1952 and 1953 and that he had taken DiAngelo to see this property first, although no agreement in regard to the price was then arrived at. Marson further informed Curtin that Walter did not have the property for sale. The next day Marson again called Curtin and told him that Walter had appeared at his home, advising him that he, Walter, had a purchaser for the property but whose name he would not disclose and that he had an offer of $22,000.00 for the property. Curtin then advised Marson that his only offer to date was $21,000.00 and that DiAngelo and Sciotti were interested in the property and that he was in the process of negotiating with them. While

the offer of Walter was refused in the beginning, later that day it was accepted on condition that he, Marson, would not have to clean out the mushroom houses and empty the beds which would have cost him about $500.00 to do and, further, that the real estate transfer taxes would be paid by the purchaser. These conditions were accepted and an agreement of sale for $22,000.00 was executed designating Kenneth Realty Co. or its nominee as purchaser. The agreement further provided that no commission on the sale price of the property would be due to Walter from appellants.

On June 3, 1954, appellants executed and delivered a deed for said property to Peter DiAngelo and Alfred Sciotti for a consideration of $22,000.00. Thereafter, the present suit in assumpsit was filed by appellees against appellants claiming a five percent commission on the sale price of $22,000.00. After trial by jury, a verdict in the amount of $1226.50 was returned in favor of appellees. Appellants' motions for judgment n.o.v. and for new trial were refused.

The basic issue raised on this appeal is whether, under the facts as above recited, the broker appellees have earned and are entitled to their commission. While the question of bad faith on the part of appellants was injected into the trial of this cause, we do not deem it necessary for the consideration of this appeal. If the brokers have earned their commission, any subterfuge or bad faith subsequently entertained would not defeat the right to such commission. The right to compensation is a matter of contract and if the terms of the contract have been fulfilled, a broker is entitled to his compensation.

In *Shapira v. Union Trust Co.*, 306 Pa. 35, 158 A. 564, the Supreme Court aptly said: "There is no special halo surrounding real estate contracts. The law does not imply a contract that does not exist, nor im-

port terms into a contract that have been omitted therefrom simply because the parties are brokers engaged in the real estate business and persons desiring to buy or sell land. All we ever attempted to do was to carry out the terms of a contract of employment . . . Where there are special incidents in any contract apart from securing a satisfactory person who is willing to contract at an agreeable price, such incidents have been termed 'special features' and the contracts 'special contracts.' In all of these we have held that it is necessary to carry out the terms of the contract, and the cases cited stand for no more than that an agent must comply with the terms of his contract before he can recover." See also *Clark et al. v. Provident Trust Company of Philadelphia, Trustee, et al.*, 329 Pa. 421, 198 A. 36; *Freiwald v. Fidelity Interstate Casualty Co.*, 185 Pa. Superior Ct. 190, 138 A. 2d 146. The general rule is well settled that a real estate broker's right to a commission accrues as soon as he presents a purchaser ready, willing and able to purchase the property upon the agreed terms: *Freiwald v. Fidelity Interstate Casualty Co.*, supra; *Follansbee Estate*, 161 Pa. Superior Ct. 31, 53 A. 2d 864; *Sweeney v. Oil and Gas Co.*, 130 Pa. 193, 18 A. 612.

The question we must decide, therefore, is whether the broker in the instant case falls under the general rule or whether his contract contained special incidents which had to be complied with before the commission was due. There is no doubt that if the broker had procured a purchaser willing to pay $25,000.00 for this property, under the general rules he would have been entitled to his commission. There is also no doubt that the terms of the broker's contract was modified and was so understood by the broker. Curtin was asked on direct examination:

"Q. As I understand it, Mr. Curtin, the original asking price was $25,000 and thereafter Mr. Marson agreed to drop it to $22,500 clear to himself?  A. Yes."

On cross-examination, the fact that Curtin was to receive a commission only on a price over and above $22,500.00 was made clear:

"Q. I think you testified that some days later you had brought back [to] him an offer of $21,000, is that correct, from a Mr. Lovisa?  A. Yes, that is correct. Q. After you gave Mr. Marson that offer was there a further discussion of the terms of this contract? A. Yes. Q. What were they?  A. He would not accept the $21,-000 but he did agree to accept $22,500 clear to him. Q. Then your contract with Mr. Marson, on the basis of these several conferences, was the gross figure of $25,000 or $22,500 net to him; is that correct?  A. Yes, $22,500 net to him was as low as he intimated that he would go.  Q. That meant that if you sold the property for less than $25,000, Mr. Marson was to receive no less than $22,500; is that correct?  A. That was the price he had agreed to accept.  I can't tell you whether he would accept less or not.  Q. Answer my question, please.  A. Repeat it, please?  Q. On the basis of these two conversations with Mr. Marson whereby first it was determined that he would accept the gross price of $25,000 and, secondly, after you submitted him an offer of $21,000, he indicated that he would take $22,-500 net to him?  A. Yes.  Q. Let me ask you this question and we will drop the matter.  I will repeat what I said previously.  The first conversation with Mr. Marson in reference to price, he indicated to you, he told you that he would accept $25,000 gross; is that correct?  A. That is correct.  Q. After you brought back him an offer of $21,000, he indicated that he would accept something less?  A. Right.  Q. Namely, $22,500 net to him?  A. That is correct.  Q. That net

did not mean before payment of the commission? A. No, that meant clear to him, exclusive of commission. Q. The commission was to be figured on top of that? A. That would be correct."

In view of this evidence it is clear that appellees were entitled to a commission on a price over and above the figure of $22,500.00. Had appellees sold the property to DiAngelo and Sciotti for $22,500.00, clearly they would have been entitled to no commission. Does the fact that someone else sold this property to the same parties for the same price ($22,000.00 plus an allowance of $500.00 for cleaning out the mushroom houses) give them any greater right? We think not, especially in view of the fact that appellees submitted no offer from the ultimate purchasers. Their contract with appellants clearly had a special incident which removed their claim from the general rule and placed it squarely under the rule of *John Fink Agency v. Dougherty*, 90 Pa. Superior Ct. 443; *Uram and Ernst v. Dessner*, 92 Pa. Superior Ct. 401.

Prior to submission of the case to the jury, appellants requested the court below to charge as follows: "If you the jury find that the oral agreement between plaintiff John D. Curtin and defendant Louis M. Marson was that a commission on the sale of the real estate was to be paid only if a purchaser was produced to defendants ready, willing and able to pay $25,000 gross or $22,500 net to defendants, your verdict must be for defendants." The trial judge disaffirmed that point without reading it. Where the evidence as to a parol contract is conflicting, it is the province of the jury to define its terms; but where under plaintiff's own version he has no case, the court should so declare. *Bennett v. Crew Levick Co.*, 288 Pa. 180, 135 A. 735.

The judgment of the court below is reversed and it is directed that judgment n.o.v. be entered in favor of appellants.